UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BRYANT DUNCAN (R67004), | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 12 C 10362 |
| | ) | |
| MICHAEL ATCHISON, Warden, | ) | |
| Menard Correctional Center,[1] | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION

**CHARLES P. KOCORAS, District Judge:**

This case comes before the Court on the petition for a writ of habeas corpus filed by pro

se petitioner Bryant Duncan pursuant to 28 U.S.C. § 2254.[2]  For the reasons stated below, the

Court denies the petition and declines to issue a certificate of appealability.

## BACKGROUND

Duncan and his brother, Reginald Duncan, were charged with first-degree murder in

connection with a drive-by shooting.  The brothers were tried together before a jury in the

Circuit Court of Cook County, Illinois.  Duncan was found guilty and was sentenced to

thirty-five years of imprisonment.  Duncan is currently incarcerated at the Menard Correctional

---

[1]  Duncan's original petition named Michael Atchison, the warden of Menard
Correctional Center, as the respondent.  Rick Harrington replaced Atchison, so the court
substituted Harrington as the respondent.  *See* Rule 2 of the Rules Governing Section 2254
Cases in the United States District Courts; Dkt. 11.  Kim Butler then replaced Harrington.
Accordingly, Butler is hereby substituted as the respondent.

[2]  Duncan's brother Reginald and his sister Sylvia both share Duncan's surname.  To
avoid confusion, the Court will refer to petitioner Bryant Duncan as "Duncan" and will use his
relatives' first names.

Center in Menard, Illinois, where he is in the custody of the warden of that facility, respondent Kim Butler.

The following facts and procedural posture relevant to Duncan's § 2254 petition are drawn from the state court record. This court will presume that the state court's factual determinations are correct for the purposes of habeas review as Duncan neither contests them nor points to clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Kidd v. Lemke*, 734 F.3d 696, 703 (7th Cir. 2013).

## I. The Shooting and Duncan's Trial

On June 4, 2003, Tony Daniels was shot during a drive-by shooting in a residential alley that runs west to east in the East Garfield Park neighborhood of Chicago. Jerry Thomas, a member of the Gangster Disciples, lived near the alley. Members of the Gangster Disciples and the Four Corner Hustlers, another local gang, used the alley as a makeshift basketball court because it had a basketball hoop attached to a utility pole. The basketball court was considered neutral territory. If a vehicle enters the alley, an automatic time out results as players move to the alley's north and south sides to allow the vehicle to pass.

In late May of 2003, Thomas and other members of the Gangster Disciples challenged members of the Four Corner Hustlers to a basketball game with a cash prize. Reginald was a member of the Four Corner Hustlers and played in this game, but Duncan neither played nor watched. The Four Corner Hustlers became dissatisfied with the game because they were losing so a Four Corner Hustlers player stole the cash prize and the team fled. The Gangster Disciples pursued them but were unable to catch their opponents or recover the prize.

At approximately 6:00 p.m. on June 4, 2003, Thomas, his cousin Cole Powell, Demetrius Gibson, and Tony Daniels were playing basketball in the alley along with at least six others.

Thomas saw a blue, two-door Cougar automobile with maroon paint on the bumper enter the alley traveling east. Thomas recognized the vehicle, which he knew was owned by Reginald, and saw Reginald in the driver's seat and Duncan in the passenger's seat. Play ceased and everyone moved to the sides of the alley. Thomas, Powell, and Daniels chose the south side of the alley, which was on the vehicle's passenger side. The car stopped in the middle of the divided crowd. Thomas heard Duncan say, "We ain't no nothing," which he understood meant that the car's occupants did not intend to cause trouble.

Thomas then saw Duncan extend his right hand out of the passenger window and look left towards the driver. Duncan was holding a black handgun, which he fired eight or nine times as Thomas crouched down. Thomas ran to a nearby gangway but quickly returned as the vehicle sped off because his cousin had been shot. Daniels also was wounded in the shooting. Powell survived but Daniels did not.

The trial court denied Duncan's motion to sever and the brothers proceeded to trial together. During jury selection, potential juror Michael Regalado told the court that he had strong feelings about violence and gangs. When asked if he could put these feelings aside, Regalado said, "I don't know." Regalado also advised the court that approximately eight years ago, his cousin had been severely beaten by gang members. When the court asked if this would prevent him from being a fair and impartial juror, Regalado answered "no." The court then continued to question Regalado:

> Q [Court]: You think you could set your feelings aside and give both sides a fair trial?
>
> A [Regalado]: Yes.

| | |
|---|---|
| Q: | Are you sure about that? |
| A: | I try to keep an open mind about everything. |
| Q: | Can you do that? |
| A: | I could try, yes. |

Dkt. 29-2, Ex. I at 2-3. Reginald's counsel asked to strike Regalado for cause and Duncan's counsel joined this request. The court refused, so Reginald's counsel used his last peremptory strike on Regalado.

At trial, the prosecutor began her opening statement as follows:

> STATE: Good morning, ladies and gentlemen. A few years ago, on June 4, 2003, not ten minutes from where we sit today, one brother [Duncan], sitting over there in the white shirt, asked his other brother Reginald Duncan, sitting over there, to do him a favor. Brother to brother. "Can you do me a favor?"
>
> Well, it wasn't your ordinary favor. It wasn't, "Will you help me move[?]" because that's a huge favor. Nobody ever wants to help anybody move. It wasn't that. It wasn't, "Well, can you lend me money?" Another favor that maybe only a brother will do for you. It wasn't that either. It was: ["]Will you help me kill somebody?"
>
> CO-DEFENDANT'S COUNSEL: I am going to object.
>
> STATE: "Will you help me kill somebody tonight?"
>
> COURT: Opening remarks.
>
> STATE: That is the favor that [Duncan] asked Reginald to do for him back on June 4, 2003[,] in the area of Kedzie and Warren.

Dkt. 28-1, Ex. A at 12-13.

During the trial, the State did not present any evidence indicating that Duncan and his brother had an agreement or that Duncan had asked his brother to help him commit murder.

Thomas and Gipson both identified Duncan as the shooter. The State also presented witnesses Detective Greg Swiderek, Chicago Police Officer Erick Von Kondrat, and Detective Patrick O'Donovan, who investigated the shooting. In addition, Illinois State Police fingerprint examiner Cynthia Engleking-Prus testified that a used shell casing recovered at the scene did not have fingerprints but that slick metal surfaces rarely retain recoverable prints.

The only defense witness was Duncan's sister, Sylvia. Sylvia testified that from approximately 5:30 p.m. to 8:00 p.m., Duncan was with her while she washed clothing at a laundromat. On cross-examination, Sylvia stated that she was first asked to remember the events that transpired on the day of the shooting approximately two years later, in 2005. According to Sylvia, she was able to recall what happened on the day of the shooting despite the passage of time because she had an argument with Maurice, another sibling, on that day. She was, however, not able to recall the dates and times of other arguments with Maurice despite her admission that she frequently argued with him.

During his closing argument, Duncan's attorney emphasized that Sylvia's testimony "wasn't discredited in any way" by the State or influenced by her relationship with her brother. Dkt. 29-7, Ex. W, at LL38-LL39. He also stressed that if Sylvia had wanted to testify to protect her family, she would have said that both Duncan and Reginald were with her at the laundromat, but instead only provided an alibi for Duncan.

During her closing argument, the prosecutor also addressed Sylvia's testimony, stating:

She seemed nice enough. You know, bringing your older sister to court for you is like bringing your Mom. Everybody's got a mom, but if you don't and you got an older sister, [she] will help you out . . . . She's an older sister. We didn't drag her into this courtroom. Bryant Duncan did and what is she going to say? It is her baby brother . . . . [Sylvia and Maurice] get into it all the time and remarkably,

the only date she could recall was that date, the date of the murder. How remarkable is that? Because for the past four years they've been mixing it up every couple weeks. What did she say? "Oh, we just got into it a couple days ago. We're always mixing it up. Calling the police, but this date stands out." I don't blame her for her testimony . . . . And one of the instructions you are going to get is, you consider the bias of a witness. Well, out of everyone who testified in this case, who has the most bias? Sylvia . . . . she's got the bias. And like I said, of course she does. Everybody's got somebody in their family who will pipe up for them.

Dkt. 29-7, Ex. W, at LL93-LL96.

The jury found Duncan guilty of first degree murder, and the trial court imposed a thirty-five-year term of imprisonment.

## II. Post-Trial Proceedings

Duncan appealed his conviction to the Illinois Appellate Court, which denied relief. He then filed an unsuccessful petition for leave to appeal ("PLA") to the Illinois Supreme Court. Next, he filed a state post-conviction petition, which was summarily dismissed. He appealed to the Illinois Appellate Court, which appointed counsel. The Illinois Appellate Court subsequently allowed counsel to withdraw under *Pennsylvania v. Finley*, 481 U.S. 551 (1987), and affirmed the trial court's denial of post-conviction relief. Duncan filed a PLA, which was denied.

Next, Duncan filed a motion for leave to file a successive post-conviction petition raising ineffective assistance of counsel arguments based on his attorneys' handling of alleged prosecutorial misconduct. The trial court denied this motion and Duncan appealed. As with his first state post-conviction appeal, the Illinois Appellate Court appointed counsel and then allowed counsel to withdraw under *Finley* and affirmed the trial court's dismissal order. The

respondent represents that Duncan did not file a PLA in connection with his successive state post-conviction petition and that the time for doing so has expired.

## III. Duncan's § 2254 Petition

Meanwhile, while his successive state post-conviction proceedings were pending, Duncan filed a federal habeas corpus petition pursuant to 28 U.S.C. § 2254 with this Court and asked the Court to stay proceedings pending the conclusion of his state court successive post-conviction litigation.

### A.     The Original § 2254 Petition

The habeas petition raised the following claims:

A.     The State failed to prove that Duncan was guilty beyond a reasonable doubt because (1) the State's two key eyewitnesses (Jerry Thomas and Demetrius Gipson) gave conflicting accounts of the shooting and (2) their testimony was inconsistent with their prior statements to police, the State's Attorney, and the grand jury.

B.     Duncan did not receive a fair trial because in her opening statement, the prosecutor improperly suggested that Duncan and his brother had discussed the murder ahead of time and that Duncan's brother had asked Duncan for help committing a murder.

C.     The trial court erroneously refused to give an alibi instruction to the jury despite Sylvia Duncan's testimony placing Duncan with her at a laundromat the time of the shooting.

D.     The trial court's denial of Duncan's request for a severance, which caused Duncan to be tried with his brother, prevented Duncan from receiving a fair trial because it prevented him from testifying on his own behalf and undermined Sylvia's alibi testimony.

E.     The trial court's denial of a motion in limine seeking to bar admission of Duncan's prior drug conviction prevented him from receiving a fair trial because this ruling prevented Duncan from testifying on his own behalf and the evidence was "improper impeachment" and irrelevant.   (Dkt. 1, at 6.)

F.	The trial court prevented Duncan from receiving a fair trial and violated his right to due process by improperly overruling defense counsel's objection to the prosecutor's reference to an unrelated fight at the basketball court even though the statement should have been excluded based on a ruling on a motion in limine.

G.	In the presence of the jury, the trial judge improperly opined about the evidence by stating "'I submit to you, we have proved these propositions' in reference to the murder and accountability charges." (*Id.* at 9).

H.	Trial counsel's failure to file a notice indicating that he intended to raise an alibi defense was constitutionally ineffective because this was "the most obvious defense" given Sylvia's testimony. (*Id.*)

I.	During her closing argument, the prosecutor improperly suggested that the State's witnesses were more credible than Sylvia.[3]

J.	Counsel on direct appeal was ineffective for failing to raise Claims C through I.[4]

## B.	The Amended § 2254 Petition

Following the filing of Duncan's § 2254 petition, the Court stayed this case due to the ongoing state court successive state habeas proceedings. After these proceedings ended, the Court lifted the stay and allowed Duncan to file an amended § 2254 petition. Upon reviewing that amended petition, the Court concluded that it was an effort to tie up loose ends from the original petition and thus was meant to supplement, not replace, the original petition.

---

[3]	In Claim I of his § 2254 petition, Duncan refers to unspecified improper remarks made during the State's opening statement and closing argument. In Duncan's state post-conviction petition, he challenged the remark in the prosecutor's opening statement that is the subject of Claim B. He also argued that in closing, the prosecutor improperly suggested that the State's witnesses were more credible than Sylvia. The Court, therefore, has construed Claim I as challenging the State's remarks about Sylvia's credibility.

[4]	In Claim J, Duncan does not specify which issues his appellate counsel should have raised. Counsel raised two issues on direct appeal that also appear in Duncan's § 2254 petition (Claims A and B). The Court will thus construe Claim J as an argument that appellate counsel was ineffective for not raising the other claims in Duncan's § 2254 petition (Claims C through I).

The Court agrees with the respondent that the amended habeas petition raises a new claim: that Duncan's counsel on direct appeal was ineffective because he failed to challenge the trial court's questioning of potential jurors under *People v. Zehr*, 103 Ill.2d 472 (Ill. 1984), and mishandled jury selection with respect to Regalado. The Court will label these arguments as Claim K(1) (*Zehr*) and K(2) (Regalado), following the numbering system used by the respondent.

The Court further agrees with the respondent that Duncan's amended § 2254 petition repeats Claim I (that during her closing argument, the prosecutor improperly suggested that the State's witnesses were more credible than Sylvia) so the Court will combine the arguments in the original and amended petitions regarding the prosecutor's comments about Sylvia's credibility.

Next, in his amended § 2254 petition, Duncan argues that the state appellate court improperly reviewed Claim B (the prosecutor's suggestion in her opening statement that Duncan and his brother had discussed the shooting ahead of time) using the plain error standard because it erroneously found that trial counsel had failed to object.[5] The respondent argues that the state court's finding of waiver is an independent and adequate state ground that bars federal habeas review of Claim B. The Court will likewise discuss waiver when it addresses Claim B. This leaves the Court with ten claims in the original petition (Claims A through J) and one new two-part claim in the amended petition (Claim K(1) and K(2)).

## DISCUSSION

---

[5] The respondent asserts that Duncan's waiver argument relates to Claim A. The Court will not address waiver in connection with Claim A as the reference to Claim A appears to be a typographical error since Duncan's discussion of waiver clearly relates to the alleged prosecutorial misconduct that is the subject of Claim B.

Multiple procedural doctrines limit a federal court's power to reach the merits of claims raised in habeas petitions filed pursuant to 28 U.S.C. § 2254. For the following reasons, the doctrine of procedural default bars Claims A (guilt beyond a reasonable doubt), C (refusal to give Duncan's requested alibi instruction), D (denial of request for severance), E (admission of evidence about a prior drug conviction), F (admission of evidence about a prior fight at the basketball court), G (trial judge's comments about the evidence), H (trial counsel's failure to provide notice of intent to raise an alibi defense), and J (ineffective assistance of direct appeal counsel) as Duncan did not present these claims in one full round of state court review. Moreover, the independent and adequate state ground doctrine bars Claim B (prosecutorial misconduct based on the opening statement). Next, none of the exceptions to procedural default are applicable. Finally, although Duncan properly preserved Claims K(1) (*Zehr*), K(2) (Regalado), and I (prosecutorial misconduct based on the closing argument), both parts of Claim K are untimely and, in any event, fail on the merits, and Duncan is not entitled to relief based on Claim I.

## I.     Procedural Default

### A.     One Full Round (Claims A, C, D, E, F, G, H, and J)

A petitioner must present his claims to all levels of the Illinois courts to avoid procedural default. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 844-45 (1999). Thus, a claim is procedurally defaulted unless it was presented to the state trial court, the Illinois Appellate Court, and the Illinois Supreme Court. *See Castille v. Peoples*, 489 U.S. 346, 349 (1989); *see also Lewis v. Sternes*, 390 F.3d 1019, 1025-26 (7th Cir. 2004) ("Fair presentment in turn requires the petitioner to assert his federal claim through one complete round of state-court review, either on

direct appeal of his conviction or in post-conviction proceedings . . . . This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory.").

In his reply memorandum, Duncan explains that he deleted Claims A, C, D, E, F, G, H in his amended petition because he did not present them through one full round of state court review. Dkt. 32, at 7. The Court has independently evaluated procedural default due to Duncan's pro se status and will add Claim J to the list of potentially defaulted claims. Its consideration of procedural default for Claims A, C, D, E, F, G, H, J begins and ends with a study of Duncan's direct and post-conviction PLAs filed with the Illinois Supreme Court, as neither PLA contains these claims. *See Ornelas v. Lemke*, No. 12 C 8476, 2014 WL 2977958, at *12 (N.D. Ill. July 2, 2014) ("it does not matter whether [the petitioner] properly raised each . . . claim before the Illinois Appellate Court because each claim is nevertheless defaulted: [the petitioner] did not raise them in his petition for leave to appeal (PLA) to the Illinois Supreme Court.").

### 1. Direct Appeal PLA

In the PLA for Duncan's direct appeal, filed with the assistance of appointed counsel, he argued that he did not waive his right to challenge the prosecutor's suggestion in her opening statement that Duncan's brother asked Duncan to help him kill someone, and that the comment should be viewed as presumptively prejudicial. This corresponds to Claim B in Duncan's § 2254 petition. The fact that only Claim B appears in Duncan's direct appeal PLA means that Duncan did not preserve Claims A, C, D, E, F, G, H, J through one complete round of state court review during his direct appeal because regardless of whether any of these claims were raised at the trial and intermediate appellate court levels (an issue which the Court need not reach), they are not in Duncan's direct appeal PLA. *See id.*, *see also O 'Sullivan*, 526 U.S. at 844 (failure to present claim to state's highest court means that it is procedurally barred).

### 2. State Post-Conviction PLA

Duncan can still avoid procedural default for Claims A, C, D, E, F, G, H, and J if he presented these claims through one complete round of state court review during his state post-conviction proceedings. Duncan filed a pro se state post-conviction PLA that explicitly raised two issues: (1) the claims in his state post-conviction met the "gist" standard and thus should not have been summarily dismissed and (2) the Illinois Appellate Court erred when it allowed his appointed appellate counsel to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987).

Illinois' Post-Conviction Hearing Act, 725 ILL. COMP. STAT. §§ 5/122-1 to 122-7, provides a three-step process for a petitioner to challenge a conviction or sentence based on an alleged violation of his federal or state constitutional rights. *People v. Pendleton*, 223 Ill.2d 458,

471 (Ill. 2006). At the first stage of post-conviction review, the state trial court must screen a petition and dismiss it if it is "frivolous or is patently without merit." 725 ILL. COMP. STAT. § 5/122–2.1(a)(2). This standard is satisfied if "[t]he allegations of the petition, taken as true and liberally construed, . . . present the gist of a constitutional claim." *People v. Brown*, 236 Ill.2d 175, 184 (Ill. 2010).

According to Duncan, the trial court imposed a more rigorous standard than the "gist" test when it summarily dismissed his state post-conviction petition. Duncan's state post-conviction PLA discusses the "gist" issue at length and briefly addresses the Illinois Appellate Court's decision to allow his counsel to withdraw. In the course of arguing the "gist" issue, he references many of his underlying claims. Specifically, he states:

> Here, Bryant Duncan alleged inter alia, that the trial court failed to strictly comply with Supreme Court Rule 431(B) by failing to ask [jurors] if they accepted the [*Zehr*] principles [Claim K(1)], that the trial court erred in failing to remove a biased juror for cause who'd admitted his bias against gangs and informed the court that his cousin had been [severely] beaten by gang members [Claim K(2)], that the trial court failed to issue a non IPI instruction offered by the defense that would have worked to instruct on an alibi defense [Claim C], that the court improperly refused to grant the Petitioner a severance so that he would be tried separate[ly] from his co-defendant [Claim D], that the prosecution violated the [court's] ruling on the defense motion in-limine when they'd offered testimony about a fight taking place on the basketball court at an earlier date which was ultimately the scene of the shooting in the case at bar [Claim F], that the prosecution made improper comments in both opening and closing arguments when in opening arguments it was argued that the Petitioner asked his brother to help him murder someone although no such evidence was presented at trial [Claim B] and during closing the prosecution improperly commented on the credibility of the defense witness by suggesting she lied for her brother [Claim I], and that he was deprived of the effective assistance of both trial and appellate counsel as it would relate to the [issues] herein mentioned above [Claim J as to appellate counsel].

Dkt. 29-2, Ex. L at 9. Later in the PLA, Duncan repeats that Regalado should not have served on the jury (Claim K(2)) and that the prosecutors made improper comments during opening statements (Claim B) and closing arguments (Claim I).

The Court must determine whether these references to claims that also appear in Duncan's § 2254 petition are sufficient to preserve them. The Court begins with claims that are raised in the § 2254 petition but are not mentioned in Duncan's state post-conviction PLA at all. As detailed in the chart below, Duncan's state post-conviction PLA references Claims B, C, D, F, I, J, K(1), and K(2). Claims A, E, G, and H do not appear in any form in Duncan's state post-conviction PLA. Thus, they are procedurally defaulted. *See Ornelas*, 2014 WL 2977958, at *12; *O'Sullivan*, 526 U.S. at 844.

| § 2254 Claim Number | Description | Mentioned in the State Post-Conviction PLA in Any Way? | |
|---|---|---|---|
| | | *Yes* | *No* |
| A | guilt beyond a reasonable doubt | | X |
| B | prosecutorial misconduct based on the opening statement | X | |
| C | refusal to give alibi instruction | X | |
| D | denial of request for severance | X | |
| E | admission of evidence about a prior drug conviction | | X |
| F | admission of evidence about a prior fight at the basketball court | X | |
| G | trial judge's comments about the evidence | | X |
| H | trial counsel's failure to provide notice of intent to raise an alibi | | X |

| | defense | | |
|---|---|---|---|
| I | prosecutorial misconduct based on the closing argument | X | |
| J | ineffective assistance of direct appeal counsel | X | |
| K(1) | *Zehr* instruction | X | |
| K(2) | Questioning of Regalado during jury selection | X | |

This leaves Claims C (refusal to give alibi instruction), D (denial of request for severance), F (admission of evidence about a prior fight at the basketball court), and J (ineffective assistance of direct appeal counsel). Duncan briefly mentions these claims in the context of providing a list of issues that were improperly analyzed by the trial court during at the initial review stage due to the trial court's purported use of an incorrect standard. Even construing Duncan's filings broadly given that his pro se status before this Court and when he filed his state post-conviction PLA, the reference to Claims C, D, F, and J in the PLA would not place a reviewing court on notice that Duncan was challenging the trial court's disposition of these claims on the merits. Instead, the PLA, at its heart, is focused on the standard of review that the trial court used when it dismissed his petition at the first stage of state post-conviction review.

This conclusion is supported by United States Supreme Court precedent addressing what is commonly known as the doctrine of full and fair presentment. Under that doctrine, a habeas petitioner must allow the state courts to consider his federal constitutional arguments in the first instance. *Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971)). Thus, a petitioner must alert the state courts that his claims are based on the

United States Constitution. *See id.*; *see also Anderson v. Harless*, 459 U.S. 4, 6 (1982) ("It is not enough that all the facts necessary to support the federal claim were before the state courts or that a somewhat similar state-law claim was made") (internal citations omitted).

Duncan's passing references to Claims C, D, F, and J in his state post-conviction PLA cannot fairly be read as merits arguments, let alone merits arguments based on the United States Constitution. Accordingly, the mention of these claims is not enough to "cast [these claims] in federal constitutional terms through one complete round of state review." *See Stevenson v. Gaetz*, No. 11 C 4394, 2013 WL 1385557, at *3 (N.D. Ill. Apr. 3, 2013). This conclusion is not affected by Duncan's lengthy argument in his reply memorandum that he adequately raised Claim J in his state post-conviction PLA. The Court disagrees, for the reasons discussed above.

In sum, Claims A, E, G, and H are procedurally defaulted for failure to present them through a complete round of state court review because they are neither in Duncan's direct appeal PLA nor his state post-conviction appeal PLA. Claims C, D, F, and J are procedurally defaulted for failure to present them through a complete round of state court review because Duncan did not include them in his direct appeal PLA or present them sufficiently in his state post-conviction PLA.

**B.    Independent and Adequate State Ground (Claim B)**

The respondent argues that Claim B (prosecutorial misconduct based on the opening statement's reference to a "favor" agreed to by the brothers that led to the shooting) is barred by the independent and adequate state ground doctrine. Under this doctrine, the court may not "review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the

judgment." *Coleman v. Thompson*, 501 U.S. 722, 729 (1991), superseded by statute on other grounds, 28 U.S.C. § 2254(b)(2). A state law ground is independent when "the state court actually relied on a state rule sufficient to justify its decision" and is adequate when the state court applies the rule "in a consistent and principled way." *Prihoda v. McCaughtry*, 910 F.2d 1379, 1382-83 (7th Cir. 1990).

If a petitioner "fails to raise his federal claims in compliance with relevant state procedural rules, the state court's refusal to adjudicate the claim ordinarily qualifies as an independent and adequate state ground for denying federal review." *Cone v. Bell*, 556 U.S. 449, 465 (2009). "A state court's finding of forfeiture is an independent and adequate state law ground." *Oliver v. Pfister*, No. 13 C 426, 2013 WL 3177882, at *6 (N.D. Ill. June 20, 2013) (citing *Liegakos v. Cooke*, 106 F.3d 1381, 1385 (7th Cir. 1997)); *see also Woods v. Schwartz*, 589 F.3d 368, 375 (7th Cir. 2009) (waiver is an independent and adequate state law ground).

Turning to the state court proceedings regarding the challenged portion of the opening statement, on direct appeal, the Illinois Appellate Court stressed that Duncan's counsel did not lodge a contemporaneous objection. It also noted it did not need to reach whether Duncan's counsel should have objected separately at trial after an objection from Reginald Duncan's counsel was overruled because Duncan's counsel did not raise the alleged prosecutorial misconduct in a post-trial motion. Accordingly, the Illinois Appellate Court concluded that, under Illinois law, Duncan had waived the issue of prosecutorial misconduct based on the opening statement on appeal. It thus evaluated the prosecutor's comments about the "favor" for plain error and found that although they were improper, they were not prejudicial based on

instructions given to the jury and the evidence presented at trial, including that of two eyewitnesses (Thomas and Gipson).

The Illinois Appellate Court's finding of waiver clearly rested on its conclusion that Duncan did not properly preserve Claim B as required by state law. Thus, this claim is barred by the independent and adequate state ground doctrine. *See Cone*, 556 U.S. at 465; *Oliver*, 2013 WL 3177882, at *6. Moreover, the Illinois Appellate Court's alternative rejection of this claim based on plain error review does not affect this conclusion as the Seventh Circuit "consistently [has] held that where a state court reviews a federal constitutional claim for plain error because of a state procedural bar (here, the doctrine of waiver), that limited review does not constitute a decision on the merits." *Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2010). That is what occurred here. Accordingly, Claim B is barred by the independent and adequate state ground doctrine.

**C. The Exceptions to Procedural Default (Claims A, B, C, D, E, F, G, H, and J)**

There are two exceptions to procedural default that, if met, allow a federal habeas court to reach the merits of a defaulted claim. First, the "cause and prejudice" exception applies if a petitioner identifies an "objective factor external to the defense [that] impeded [his] efforts to comply with the State's procedural rule" and demonstrates actual prejudice resulting from the alleged violation of federal law. *Strickler v. Greene*, 527 U.S. 263, 282 n.24 (1999). Alternatively, a petitioner can avoid default using the "fundamental miscarriage of justice" exception, which applies in "situations where the constitutional violation has probably resulted in a conviction of one who is actually innocent." *Dellinger v. Bowen*, 301 F.3d 758, 767 (7th Cir. 2002) (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)). To show actual innocence, a petitioner must present "new, reliable evidence of his innocence" so convincing that "'in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Woods v. Schwartz*, 589 F.3d 368, 377 (7th Cir. 2009) (quoting *Schlup*, 513 U.S. at 329).

Duncan does not assert that cause and prejudice or the fundamental miscarriage of justice exceptions excuse his defaults. Thus, neither exception saves the claims that are barred due to the failure to present them through one full round of state court review (Claims A, C, D, E, F, G, H, and J) or the independent and adequate state ground doctrine (Claim B). *See Crockett v. Hulick*, 542 F.3d 1183, 1193 (7th Cir. 2008) (declining to consider exceptions when the petitioner did not argue that they applied).

**II. Alleged Prosecutorial Misconduct Based on Comments About Sylvia's Credibility in the State's Closing Argument (Claim I)**

In Duncan's state post-conviction petition, he argues that the State's suggestion in its closing argument that Sylvia was less credible than the State's witnesses violated his right to due process. Duncan presented this claim before the trial court, the Illinois Appellate Court, and the Illinois Supreme Court so this Court may consider whether he is entitled to federal habeas relief on the merits. The state courts' explanation of their rejection of this claim is terse. The trial court stated that the statements at issue did "not constitute prosecutorial misconduct. Indeed, the State's remark is based in the law and not improper." Dkt. 28-2, Ex. H at 9. The Illinois Appellate Court did not provide any specific comments on the issue as its final order allowed appointed counsel to withdraw based on its finding that there was "no issue of arguable merit." Dkt. 29-2, Ex.K at 3.

A habeas petitioner is entitled to a writ of habeas corpus under 28 U.S.C. § 2254 if the challenged state court decision is either "contrary to" or "an unreasonable application of" clearly established federal law as determined by the United States Supreme Court. *See* 28 U.S.C. § 2254(d)(1); *Avila v. Richardson*, 751 F.3d 534, 536 (7th Cir. 2014) (citing *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000)). A state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by the Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." *Williams*, 529 U.S. at 405.

With respect to the "unreasonable application" prong of § 2254(d)(1), a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *Id*. at 407. The unreasonable application

standard "is particularly exacting" as to meet it, "a state prisoner must show that the state court's

ruling on the claim being presented in federal court was so lacking in justification that there was

an error well understood and comprehended in existing law beyond any possibility for fairminded

disagreement." *Warren v. Baenen*, 712 F.3d 1090, 1096 (7th Cir. 2013) (quoting *Harrington v.*

*Richter*, 131 S.Ct. 770, 786 (2011)).

The relevant United States Supreme Court precedent for due process claims based on

allegedly improper comments by prosecutors in a closing argument is *Darden v. Wainwright*, 477

U.S. 168 (1986). According to the Seventh Circuit:

> *Darden* established a two-prong test for determining whether [the] prosecutors'
> comments in closing argument constitute a denial of due process. The court must
> first look to the challenged comments to determine whether they were improper.
> If the comments were improper, the court must consider a number of factors to
> determine whether the defendant was prejudiced by the comments. Among the
> factors to be considered by the court in deciding whether the defendant was
> prejudiced by the comments are: (1) whether the prosecutor misstated the
> evidence, (2) whether the remarks implicate specific rights of the accused, (3)
> whether the defense invited the response, (4) the trial court's instructions, (5) the
> weight of the evidence against the defendant, and (6) the defendant's opportunity
> to rebut. In determining whether the prosecutors' remarks were prejudicial,
> however, it is not enough that the prosecutors' remarks were undesirable or even
> universally condemned. The relevant question is whether the prosecutors'
> comments so infected the trial with unfairness as to make the resulting conviction
> a denial of due process.

*Ellison v. Acevedo*, 593 F.3d 625, 635-36 (7th Cir. 2010) (internal citations and quotations

omitted).

Here, the state courts did not cite to *Darden* or, indeed, any authority. Instead, it rejected

Duncan's argument out of hand based on its conclusion that the prosecutor's comments about

Sylvia's credibility were proper and allowable. When a state court "rules on the merits of an

argument raised by the petitioner but does not discuss the claim with reference to federal law, it

is irrelevant as long as the standard applied by the state court is as demanding as the federal standard." *Murphy v. Atchison*, No. 12 C 3106, 2013 WL 4495652 (N.D. Ill. Aug. 19, 2013) (citing *Oswald v. Betrand*, 374 F.3d 475, 477 (7th Cir. 2004)); *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam) (if "neither the reasoning nor the result of the state-court decision contradicts" federal law, its decision satisfies § 2254(d)(1) despite a lack of citation to or awareness of federal precedent).

This Court finds that the state courts' rejection of Duncan's due process claim based on the comments about Sylvia's credibility is neither contrary to nor an unreasonable application of *Darden*. First, Duncan does not argue that the prosecutor's comments were inaccurate or misstated Sylvia's testimony. Instead, he takes issue with the State's suggestion that Sylvia's alibi testimony was not credible and that she was biased.

These criticisms do not support a grant of habeas relief. First, a prosecutor may characterize evidence in a way that does not benefit the defendant. *U.S. ex rel. Tucker v. Gaetz*, No. 06 C 1639, 2009 WL 3837484, at *8 (N.D. Ill. Nov. 16, 2009) (citing *United States v. Durham*, 211 F.3d 437, 440 (7th Cir. 2000). Similarly, in closing arguments, a prosecutor may "draw reasonable inferences from the evidence presented." *Id.* Second, the prosecutor's comments did not implicate a specific right; they merely suggested that Duncan's alibi defense – which was supported solely by Sylvia's testimony – was incredible.

Third, in his closing argument, Duncan's counsel argued that the State had not discredited Sylvia's testimony and that she was not biased due to her relationship with Duncan. The defense thus invited the prosecutor's arguments to the contrary. Fourth, as the respondent correctly notes, the trial court instructed the jurors that the attorneys' closing arguments were not evidence

and that they were the sole judges of credibility. Finally, while Duncan disagrees with the jury's findings, two eyewitnesses (Thomas and Gipson) identified Duncan as the shooter. This Court may not redetermine witness credibility and testimony from even a single witness is sufficient to support a conviction. *See Murphy*, 2013 WL 4495652, at *12 (collecting cases).

Accordingly, the state courts' rejection of Duncan's prosecutorial misconduct claim based on the prosecutor's comments about Sylvia's credibility did not deprive Duncan of a fair trial and are neither contrary to nor an unreasonable application of, clearly established federal law. Thus, Duncan is not entitled to habeas relief based on Claim I.

**III.    Duncan's Arguments About Jury Selection (Claims K(1) & K(2))**

In his amended § 2254 petition, Duncan raises two claims based on jury selection. First, in Claim K(1), he argues that the trial court failed to ask potential jurors whether they understood the principles outlined in *People v. Zehr*, 469 N.E.2d 1062, 1063-64 (Ill. 1984). Illinois Supreme Court Rule 431(b) codified the *Zehr* decision. *People v. Kidd*, 2014 IL App (1st) 112854 ¶ 36, 7 N.E.3d 188 (Ill. App. 2014). Rule 431(b) provides that:

> The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that the defendant's failure to testify cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's failure to testify when the defendant objects.

Ill. Sup. Ct. Rule 431(b). Second, in Claim K(2), Duncan argues that trial counsel provided constitutionally deficient performance based on his handling of Regalado during jury selection by

not adequately questioning Regalado about his feelings about gangs and allowing him to serve on the jury despite his statement that he would "try" to keep an open mind. (Dkt. 22, at 27.)

The respondent asserts that Duncan's jury selection claims are time-barred because they were filed after the one-year statute of limitations expired and do not relate back to any of the claims raised in Duncan's original petition. *See generally Mayle v. Felix*, 545 U.S. 644, 656-57 (2005) (discussing the relation-back doctrine in the context of a state habeas petition). The Court will not calculate the limitations period as Duncan argues that his claims are timely because they relate back. Dkt. 32, at 2-7. He thus tacitly concedes that they were filed after the statute of limitations expired.

According to Duncan, his ineffective assistance of counsel jury selection claims are proper because he raised ineffective assistance of counsel claims in his original petition. The fact that the original petition contained ineffective assistance claims, however, is not determinative. "In the habeas context, the criminal trial itself does not constitute a common occurrence; if the newly raised claim arises from facts that are separated in time and type from those underlying the original claims, they do not relate back." *McKinley v. Harrington*, No. 11 C 04190, 2014 WL 1292798, at *5 n.5 (N.D. Ill. Mar. 31, 2014) (internal quotations omitted). Instead, new claims relate back if they "share a common core of operative facts" with the original claims. *Id.*; *see also Mayle*, 545 U.S. at 655 (to relate back, new claims must arise from the same conduct, transaction, or occurrence set forth in the original pleading).

Claims K(1) and K(2) clearly do not rely on the same facts as Duncan's prior ineffective assistance claims as Duncan's original petition did not request federal habeas relief based on anything that happened during jury selection. Thus, the ineffective assistance of counsel jury

ˇ24ˇ

selection claims are untimely. This conclusion is not affected by the fact that Duncan filed a successive state post-conviction petition because that filing did not include any jury selection claims and Duncan did not file a PLA in connection with his successive petition.

In any event, the ineffective assistance jury selection claims also would fail on the merits. Claim K(1) is based on trial counsel's alleged failure to ensure that the trial court followed state law during the questioning of potential jurors. This claim would not be cognizable in a federal habeas proceeding because "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Wilson v. Corcoran*, 131 S.Ct. 13, 16 (2010) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)); *see also* 28 U.S.C. § 2254(a) (a federal court may issue a writ of habeas corpus to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States").

Duncan's contention that his trial counsel was ineffective due to his handling of Regalado during jury selection would also fail if it was properly before the Court. Duncan's characterization of the record is correct insofar as the trial counsel refused to strike Regalado for cause and Duncan's counsel did not use a peremptory challenge on Regalado. The trial transcript, however, shows that co-defendant Reginald Duncan's counsel used a peremptory challenge on Regalado, who was then excused. Dkt. 29-5, Ex. S at II-190-9. This is consistent with post-conviction appellate counsel's motion for leave to withdraw, which states that Reginald Duncan's counsel struck Regalado using his last peremptory challenge. Dkt. 29-2, Ex. H, at 2.

Any purportedly ineffective assistance provided by Duncan's trial counsel relating to Regalado could not have prejudiced Duncan since Regalado did not serve as a juror. The lack of prejudice dooms any ineffective assistance of counsel claim. *See Strickland v. Washington*, 466

U.S. 668, 687 (1984). A "[f]ailure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel." *Fonville v. Anglin*, No. 12-CV-2161, 2014 WL 237163, at *6 (C.D. Ill. Jan. 22, 2014) (quoting *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996)). For all of these reasons, Duncan's jury selection arguments are both time-barred and unavailing.

## IV. Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, which provides that the district court must issue or deny a certificate of appealability when it enters "a final order adverse to the applicant," the court turns to whether a certificate of appealability should be issued. Under 28 U.S.C. § 2253(c)(2), "(1) [a] certificate of appealability may be issued only if the prisoner has at least one substantial constitutional question for appeal; (2)[t]he certificate must identify each substantial constitutional question; (3)[i]f there is a substantial constitutional issue, and an antecedent non-constitutional issue independently is substantial, then the certificate may include that issue as well; (4)[a]ny substantial non-constitutional issue must be identified specifically in the certificate; [and] (5)[i]f success on a non-constitutional issue is essential (compliance with the statute of limitations is a good example), and there is no substantial argument that the district judge erred in resolving the non-constitutional question, then no certificate of appealability should issue even if the constitutional question standing alone would have justified an appeal." *Davis v. Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003).

Based on the reasons stated in this opinion, Duncan has not established "that reasonable jurists could debate whether the challenges in his habeas petition should have been resolved differently or that his petition adequately shows a sufficient change of the denial of a

constitutional right that he deserves encouragement to proceed further." *See Rutledge v. United States*, 230 F.3d 1041, 1047 (7th Cir. 2000). Therefore, the Court declines to issue a certificate of appealability.

## CONCLUSION

For the foregoing reasons, the Court denies Duncan's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 and declines to issue a certificate of appealability. The Clerk is directed to substitute Kim Butler as the respondent.

Charles P. Kocoras
United States District Judge

Dated: August 13, 2014